IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:17-CV-00026-GCM

| | |
|---|---|
| RAISSA LEVY, JAMES VILLANEUVA, SHANNA RIVERA, ANDRÉ MCCOY individually and on behalf of all similarly situated, | )<br>)<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | )     **ORDER** |
| INFILAW CORPORATION, CHARLOTTE SCHOOL OF LAW, LLC, | )<br>)<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

This matter is before the Court upon Defendants Charlotte School of Law, LLC, Infilaw Holding, LLC and Infilaw Corporation's Motion to Dismiss for failure to state a claim upon which relief can be granted.[1] Plaintiffs have filed a response in opposition and Defendants have filed a Reply. Accordingly, this matter is ripe for disposition.

**I.     FACTUAL BACKGROUND**

This action is one of several filed against Charlotte School of Law, LLC ("CSL"), its parent corporation, and others after CSL was placed on probation by the American Bar

---

[1] Plaintiffs subsequently voluntarily dismissed Defendant Infilaw Holding, LLC as well as the Sterling Capital Partners Defendants. The only remaining Defendants are Charlotte School of Law, LLC and Infilaw Corporation.

1

Association ("ABA") in November of 2016 and CSL's access to federal student loan programs was subsequently revoked by the Department of Education ("DOE").

CSL was founded in 2006 and is one of three for-profit law schools owned by Defendant InfiLaw Corporation ("InfiLaw"). (Second Amd. Compl. ("SAC") ¶¶ 16, 22). The ABA promulgates Standards and Rules of Procedure for Approval of Law Schools ("Standards") with which law schools must comply in order to obtain accreditation and remain in good standing. CSL was granted full ABA accreditation in 2011. *Id*. at ¶ 16.

In March of 2015, the ABA conducted a Three Year Interval evaluation of CSL. Representatives of the ABA conducted an onsite inspection and met with CSL staff, owners, administrators, faculty, and students. *Id*. at ¶ 24. In September of 2015, CSL was provided with the ABA Inspection Report, which revealed deficiencies regarding CSL's compliance with ABA Standards. *Id*. at ¶ 25. CSL responded to the Inspection Report in October of 2015. *Id*. The ABA subsequently issued a decision stating there was "reason to believe" that CSL had "not demonstrated compliance" with multiple ABA standards, and requested additional information to assess CSL's possible non-compliance with several other ABA Standards, including Standards 301(a),[2] 501(a),[3] 501(b),[4] and Interpretation 501-1.[5] *Id*. at ¶¶ 26–27.

---

[2] Standard 301(a): "A law school shall maintain a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical and responsible participation as members of the legal profession."
[3] Standard 501(a): "A law school shall maintain sound admission policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education."
[4] Standard 501(b): "A law school shall not admit an applicant who does not appear capable of satisfactorily completing its program of legal education and being admitted to the bar."
[5] Interpretation 501-1: "Among the factors to consider in assessing compliance with this Standard are the academic and admission test credentials of the law school's entering students, the academic attrition rate of the law school's students, the bar passage rate of its graduates, and the effectiveness of the law school's academic support program."

After CSL responded to the ABA's request for information, the ABA issued a second determination on February 3, 2016, finding that CSL was "not in compliance" with Standards 301(a), 501(a), 501(b), and Interpretation 501-1. *Id.* at ¶ 28. Specifically the ABA found:

> [CSL] has not demonstrated that it is maintaining a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession; maintaining sound admissions policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education; or is admitting applicants who do not appear capable of satisfactorily completing its program of legal education and being admitted to the bar.

*Id*. The ABA held a hearing on June 23, 2016, attended by CSL employees. *Id*. at ¶ 29. In July, 2016, the Committee issued another decision, again finding CSL was out of compliance with Standards 301(a), 501(a), 501(b), and Interpretation 501-1, describing CSL's noncompliance as "substantial and persistent." *Id*. On November 14, 2016, the ABA issued its last decision, entitled "Notice of Probation and Specific Remedial Action," concluding that CSL was still not in compliance with Standards 301(a), 501(a), 501(b), that the noncompliance was "substantial" and "persistent," and that CSL's plans to bring CSL into compliance "have not proven effective or reliable." *Id*. at ¶ 30. CSL was ordered to inform its students of the remedial actions the school was required to take. *Id*.

Plaintiffs allege that CSL then advised its students that the ABA accreditation committee issued a letter that was "mainly positive" but noted a few areas that "could be strengthened." *Id*. at ¶ 35. Plaintiffs allege that such communication did not accurately describe CSL's accreditation status with the ABA. *Id*. CSL failed to inform its students and potential students that the ABA determined that CSL had "not demonstrated that it is maintaining a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession" until

3

November, 2016. *Id*. Moreover, CSL promoted and maintained on its website, in its advertising, and in numerous public statements that it was, in all respects, ABA accredited and compliant. *Id*. at ¶ 37. Furthermore, CSL claimed that students who were admitted to CSL appeared capable of satisfactorily completing its program and being admitted to the bar. *Id.* Defendants promoted that CSL continued to deliver high quality student outcomes including a 90+% job placement and bar pass rate. *Id.*

On December 19, 2016, CSL was notified by the DOE that it had denied CSL's application for continued participation in the Student Financial Assistance Programs authorized by Title IV of the Higher Education Act of 1965. *Id.* at ¶ 31. Accordingly, current students at CSL who were previously eligible for federal student loans to pay all or some of the cost of attending CSL are no longer eligible for DOE financial aid or assistance. *Id*.

Plaintiffs also allege that CSL would routinely award "Full Scholarships" to incoming first year law students to entice said students to attend the school. *Id*. at ¶ 38. The "Full Scholarship" would require the student to maintain a certain grade point average. *Id*. CSL would then group all scholarship students into the same class to compete among themselves, knowing that the grading curve would cause 75% of the students to be below the minimum G.P.A. standard at the conclusion of their first semester. *Id*. This would allow CSL to discontinue 75% of the "Full Scholarships" for these students. *Id*. This practice required the students, if they desired to remain in class, to apply for Federal Student Aid. *Id*. CSL went from paying out on a scholarship to directly receiving tuition through Federal Student Aid. *Id*.

Named Plaintiff Shanna Rivera alleges that even though she passed the July 2015 bar exam on first attempt, she was offered $5000.00 by CSL officials to defer her exam test date from July 2015 to the Winter 2016 exam date. *Id.* at ¶ 55. CSL included in this offer the prize of

4

a free CSL corporate compliance course valued by CSL at $9000.00. *Id*. Plaintiffs' allege that CSL made this offer in order to help CSL present a high bar passage rate for both exam sessions. *Id.*

Plaintiffs, former and current CSL students, filed their initial Complaint on January 19, 2017, on behalf of themselves and a class of similarly situated students, alleging causes of action under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), for Unjust Enrichment, Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Negligent Misrepresentation, Intentional Misrepresentation, Unconscionability, Punitive Damages, and "Joint Tortfeasor." Plaintiffs subsequently amended the Complaint twice to correct the names of certain Defendants. Defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting from *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). However, "[a] court is not required to accept [t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements. *Id.*

### A. Breach of contract

For breach of contract claims, the allegations regarding the terms of a contract must be "'definite and certain or capable of being made so' such that the parties 'assent to the same thing, in the same sense.'" *McFadyen v. Duke Univ.*, 786 F. Supp. 2d 887, 981 (M.D.N.C. 2011), *aff'd*

5

*in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers*, 703 F.3d 636 (4th Cir. 2012) (internal citation omitted). "Thus, a contract exists only if there is mutual intent to contract and an agreement on sufficiently definite terms to be enforceable." *Id.* Failure to allege the "specific contract terms which were breached by Defendants . . . obviously fall[s] far short of the line of 'plausibility of entitle[ment] to relief.'" *Page v. Select Portfolio Servicing, Inc.*, No. 1:12CV900, 2013 WL 4679428, at *3 (M.D.N.C. Aug. 30, 2013), report and recommendation adopted, No. 1:12CV900, 2013 WL 5462282 (M.D.N.C. Sept. 30, 2013) (quoting *Twombly*, 550 U.S. at 557); *see also Houck v. Lifestore Bank*, No. 5:13-CV-66-DSC, 2014 WL 197902, at *3 (W.D.N.C. Jan. 15, 2014) (ruling that "[b]ald assertions" about "improper" conduct were "insufficient" to allege breach of contract). In the higher education setting, a student must point to a "specific promise" about which a court can make an "objective assessment" without evaluating the "nuances of educational processes" to state a claim for breach of contract. *Ryan v. Univ. of N.C. Hosps.*, 494 S.E.2d 789, 791 (N.C. Ct. App. 1998).

Plaintiffs herein do not identify any written contract and provide no meaningful substance (or even the date) of any such alleged agreement. Plaintiffs' conclusory allegations contain no factual content of any "specific promises" about the quality of education, ABA accreditation, or a "rigorous curriculum." *Id.* Because none of the alleged promises upon which Plaintiffs rely appear in any material Plaintiffs cite, their breach of contract claims must fail. *See, e.g.*, *Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 682–83 (M.D.N.C. 2012) (rejecting breach of contract allegation because it relied on a provision that was not incorporated into any specific agreement with Plaintiff). Moreover, Plaintiffs' vague references to CSL's "public statements" and "publications" (SAC ¶¶ 81–82) are wholly ineffectual to state a contract claim, as they

6

acknowledge in their Response. Indeed, North Carolina courts have repeatedly rejected nearly identical contract claims based on such materials. *See McFadyen*, 786 F. Supp. 2d at 982.

Not only do Plaintiffs' allegations fail to allege a cognizable breach of contract claim, but the claim is an impermissible attempt to allege a cause of action for educational malpractice. North Carolina courts have repeatedly rejected such claims.[6] As the Court in *McFadyen* stated:

> [T]he [breach of contract] claim must not involve "inquiry into the nuances of educational processes and theories." . . . [T]he Court will not . . . open up any type of "educational malpractice" claim.

*Id.* at 982–83 (quoting *Ryan*, 494 S.E. 2d at 791); *see Rouse*, 869 F. Supp. 2d at 683 (rejecting claims based on vague assurances of educational quality and experience as "too general to be enforceable as a matter of contract"); *Thomas v. Olshausen*, No. 3:07CV130-MU, 2008 WL 2468738, at *2 (W.D.N.C. June 16, 2008) (ruling that claims that "Defendants denied [Plaintiff] or his son access to more challenging educational programs . . . should be dismissed as there is no cognizable claim for educational malpractice under North Carolina law"), *aff'd*, 305 F. App. 55 (4th Cir. 2008). Indeed, the North Carolina Court of Appeals recently reaffirmed that "educational malpractice claims . . . are not recognized under North Carolina law." *Arnold v. Univ. of N.C. at Chapel Hill*, No. COA16-573, 2017 WL 1382212, at *3 (N.C. Ct. App. Apr. 17, 2017) (unpublished table decision). Thus, a breach of contract claim requires more than an allegation that "the education was not good enough." *Ryan*, 494 S.E.2d at 791. Accordingly, Plaintiffs' Breach of Contract claim fails.

---

[6] Numerous other courts throughout the country have likewise refused to acknowledge claims for educational malpractice. *See, e.g.*, *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992) (affirming dismissal of contract claim alleging that school provided inadequate instruction because such claims "for educational malpractice, whether framed in terms of tort or breach of contract" are not recognized); *Lawrence v. Lorain Cty. Cmty. Coll.*, 713 N.E.2d 478 (Ohio Ct. App. 1998) (affirming dismissal of claims, including violation of state consumer practices act and breach of contract, by former student alleging that school provided a substandard education.).

Because Plaintiffs have failed to state a plausible claim for breach of contract, the Court finds it unnecessary to specifically address the timeliness of the claims of Plaintiffs Rivera and McCoy as well as the applicability of the voluntary payment doctrine.

### B. Breach of implied covenant of good faith and fair dealing

The implied covenant of good faith and fair dealing "only arises where a party to a contract performs its contractual obligations in bad faith." *Devlin v. Wells Fargo Bank, N.A.*, No. 1:12-CV-000388-MR, 2014 WL 1155415, at *10 (W.D.N.C. Mar. 21, 2014), *aff'd*, 585 F. App. 171 (4th Cir. 2014). ). "In the absence of an enforceable contract, the parties cannot have an implied covenant of good faith and fair dealing." *Giuliani v. Duke Univ.*, 1:08CV502, 2010 WL 1292321, at *9 (M.D.N.C. Mar. 30, 2010). Since the Court holds that there is no enforceable contract herein, this claim must likewise fail.

### C. Unjust Enrichment

Plaintiffs allege that the Defendants were unjustly enriched by the receipt of Plaintiffs' tuition. To plead unjust enrichment, a plaintiff must allege facts demonstrating: "(1) one party conferred a benefit upon the other party; (2) the benefit was not 'conferred officiously . . .'; (3) the benefit was not gratuitous; (4) the benefit was measureable; and (5) the defendant consciously accepted the benefit." *Law Offices of John L. Juliano, P.C., v. Jensen*, 673 Fed. Appx. 291, 2016 WL 7240176, at *3 (4th Cir. Dec. 15, 2016) (applying North Carolina law); *see also JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 750 SE. 555, 559–60 (N.C. Ct. App. 2013). Plaintiffs have failed to state a plausible claim for unjust enrichment.

First, there is no claim for unjust enrichment where a benefit is given officiously, that is to say, without "solicit[ation] or induce[ment]." *Homeq v. Watkins*, 572 S.E.2d 871, 873 (N.C. Ct. App. 2002) ("Absent such inducement or solicitation, Defendants are simply not liable for

unjust enrichment, even if they did benefit from [plaintiff]'s actions."); *Fireman's Fund Ins. Co. v. Safeco Ins. Co. of Am.*, No. 3:07-CV-86, 2007 WL 4233317, at *2 (W.D.N.C. Nov. 28, 2007) (dismissing unjust enrichment claim where plaintiff failed to allege that defendant "acted to induce or solicit [plaintiff's] actions"). Here, Plaintiffs do not allege that Defendants actively recruited them or solicited their attendance, thereby defeating Plaintiffs' claim of unjust enrichment.

Second, a claim for unjust enrichment must plausibly allege that the enrichment was in fact "unjust." Payment of tuition and fees cannot be unjust if the students received the benefit for which they paid for. There are no allegations that the Defendants failed to provide classes in legal instruction, professors to teach those classes, or classrooms in which students could be taught. In short, the Plaintiffs paid for a legal education and, in return, they received a legal education.[7] Any inquiry into the quality or value of the services provided in return for Plaintiffs' tuition and fees constitutes an impermissible foray into education malpractice.

### D. Intentional and Negligent Misrepresentation

Plaintiffs' Intentional Misrepresentation claim is essentially a fraud claim. To plead a fraud claim under North Carolina law, Plaintiffs must allege a false representation of material fact, made with knowledge of its falsity and with intent to deceive, which Plaintiffs reasonably relied upon, causing them injury. *See Caper Corp. v. Wells Fargo Bank, N.A.*, 578 F. App. 276, 281 (4th Cir. 2014). Fraud claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading

---

[7] *See Gerboc v. ContextLogic, Inc*., No. 1:16 CV 928, 2016 WL 6563684, at *6 (N.D. Ohio Nov. 4, 2016) (appeal filed Dec. 20, 2016) (dismissing unjust enrichment claim where Plaintiff paid the listed purchase price for speakers and received them even though defendant's "Website, which made it appear as though [plaintiff] was getting a great deal, was fictitious" because plaintiff "received the benefit of what he paid for"); *Augustson v. Bank of Am., N.A.*, 864 F. Supp. 2d 422, 439 (E.D.N.C. 2012) (dismissing unjust enrichment claim where complaint did not "plausibly allege circumstances creating a legal or equitable obligation for [defendant] to account for a benefit" because "plaintiffs received the loan at the interest rate that each agreed to pay").

standard. Rule 9(b) states "[i]n alleging *fraud* or mistake, a party must state with particularity the circumstances constituting *fraud* or mistake." Fed. R. Civ. P. 9(b) (emphasis added). The Fourth Circuit has further defined Rule 9(b)'s particularity requirement, saying,

> [t]o meet this standard, a[] . . . plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison I*, 176 F.3d at 784 (internal quotations omitted). These facts are often "referred to as the "who, what, when, where, and how' of the alleged fraud."

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting from *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). A claim of negligent misrepresentation is likewise subject to Rule 9(b)'s heightened pleading standard. *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 202 (M.D.N.C. 1997).

Defendants argue that Plaintiffs' intentional and negligent representation claims are not pled with the requisite particularity.[8] Plaintiffs all but concede that these claims are not pled with particularity and request leave to amend to include additional factual details. The Court will allow Plaintiffs leave to amend their Complaint with regard to these two claims to bring it into compliance with Rule 9(b). Defendants may thereafter renew their motion to dismiss should the amended complaint suffer from the same deficiencies.

### E. Unfair and Deceptive Trade Practices

Plaintiffs' UDTPA claim appears to be based on their misrepresentation claim, although other allegations in their Second Amended Complaint appear to support this claim as well. The

---

[8] Defendants also argue that the "economic loss rule" bars Plaintiff's intentional misrepresentation claim. Under the "economic loss rule," the same conduct allegedly breaching a contract cannot serve as a basis for a tort claim. *Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2011 WL 1134453, at *4–5 (E.D.N.C. Jan. 25, 2011). As the Court has already established above that there was no contract between the parties, the economic loss rule does not apply here.

10

Court notes that as in their other claims, Plaintiffs fail to incorporate the previous allegations into their UDTPA. Nevertheless, the Court will allow Plaintiffs an opportunity to amend this claim as well and the Court will defer ruling on Defendants' motion to dismiss this claim until such time as Plaintiffs have amended their Complaint.

### F. Unconscionability, Joint Tortfeasor Liability, and Punitive Damages

Count VII of Plaintiffs' Second Amended Complaint purports to state a claim for unconscionability, alleging that the amount Plaintiffs paid in tuition and fees was unconscionable as a matter of law because of Defendants' alleged conduct. (SAC ¶ 95.) However, under North Carolina law, "unconscionability is an affirmative defense," not an independent cause of action. *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 369 (N.C. 2008). In recognition of this, Plaintiffs have indicated that they withdraw Count VII.

Plaintiffs likewise concede that their purported claim for joint tortfeasor liability (Count VIII) is improper because North Carolina does not recognize liability theories as independent causes of action. *Bond v. Rexel, Inc.*, No. 5:09-CV-122, 2011 WL 1578502, at *9 (W.D.N.C. Apr. 26, 2011) (dismissing vicarious liability claim with prejudice because it is "a derivative method of assigning liability to a party . . . not a stand-alone cause of action"). Plaintiffs' stand-alone claim for punitive damages (Count IX) also must also be dismissed because "punitive damages do not and cannot exist as an independent cause of action." *Iadanza v. Harper*, 611 S.E.2d 217, 223 (N.C. Ct. App. 2005); *see Funderburk v. JPMorgan Chase Bank*, 775 S.E.2d 1, 8 (N.C. Ct. App. 2015).

Based upon the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' claims for Unjust Enrichment, Breach of

Contract, Breach of the Covenant of Good Faith and Fair Dealing, Unconscionability, Punitive Damages, and Joint Tortfeasor are **DISMISSED**. Plaintiffs are permitted to amend their claims for Intentional Misrepresentation, Negligent Misrepresentation and Unfair and Deceptive Trade Practices. Defendants may thereafter elect to renew their Motion to Dismiss as to these claims if merited.

Signed: August 17, 2017

Graham C. Mullen
United States District Judge